*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2019

Plaintiff-Appellee,

v

No. 339432
Wayne Circuit Court
LC No. 17-001583-01-FC

LEWIS THREATT,

Defendant-Appellant.

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and possessing a firearm during the commission of a felony (felony-firearm), (second offense), MCL 750.227b. We affirm.

This case arises out of a shooting at the Dragons Motorcycle Club (the club) in Detroit. On February 2, 2017, defendant was at the club along with two of his brothers, Michael Threatt and Deward Threatt. Defendant initially left the club around 2:00 a.m. Around 4:30 a.m., Michael and Deward began arguing about money, and a fight broke out between them. Willie Lott (Lott), the president of the club and the uncle of the three brothers, along with two other members, Steven Grimes and Ricco Hamilton, helped to break up the fight. Grimes also called defendant, believing that he could help settle his two brothers down. Eventually, Deward and Michael were separated, Deward left the club, and Michael went back inside with Grimes and Lott.

Soon, defendant arrived at the club. Michael took a swing at defendant, and Lott moved to stand between defendant and Michael when defendant pulled out a handgun. Defendant tried to fire two shots around Lott, but missed Michael. Michael ran out the front door of the club, and defendant followed him. Four or five more gunshots were heard. When Lott and Grimes went outside, they saw defendant with a gun in his hand and Michael lying dead in the street. Barbara Lott (Barbara)—defendant and Michael's mother—later talked to defendant on the phone and defendant told her that he did not mean to shoot Michael. Kimberly Speight, a friend

-1-

of defendant, also overheard defendant tell someone on the phone that he did not intend to kill Michael.

Subsequently, defendant was convicted of second-degree murder, felon-in-possession, and felony-firearm. This appeal followed.

Defendant contends that he was denied the effective assistance of counsel for various reasons. We disagree.

To preserve an issue of ineffective assistance of counsel, a defendant must either move for a new trial or request an evidentiary hearing in the trial court to develop that issue. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017). Defendant did not move in the trial court for a new trial or an evidentiary hearing; therefore, "our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To establish that a defendant's trial counsel was ineffective, the defendant must demonstrate that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). This Court will neither substitute its judgment for that of defense counsel regarding matters of trial strategy nor second guess trial counsel's competence with the benefit of hindsight. *People v Bailey*, 310 Mich App 703, 727; 873 NW2d 855 (2015) (citation omitted). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (quotation marks and citation omitted). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant first argues that trial counsel was ineffective for failing to object to the introduction of the surveillance video recording because the prosecution did not establish sufficient chain of custody.[1] We disagree.

We first note that defendant introduced the surveillance video recording as an exhibit at trial. Nevertheless, defendant now contends that defense counsel erred in failing to inquire further into the video's chain of custody. Under MRE 402, evidence is admissible if it is

---

[1] We note that, at trial, defendant introduced recordings from a surveillance camera that was located across the street from the club. The recordings depict a white GMC Denali, identified as defendant's car, arriving at the club, Deward arriving after Michael had been killed, and the police arriving to conduct their investigation. Because of some unexplained gaps in the recordings, it does not show the moment of the shooting.

relevant, that is, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.[2] Any gaps in the chain of custody normally go to the weight of the evidence rather than its admissibility; therefore, a perfect chain of custody is not required for the admission of evidence, and gaps do not require automatic exclusion of the evidence. *People v White*, 208 Mich App 126, 132-133; 527 NW2d 34 (1994) (citation omitted).

In this case, the video recordings depict some events that occurred outside the club on the night of February 2, 2017, thus, they help corroborate the testimony of various witnesses. Therefore, the recordings are relevant and admissible. MRE 401; MRE 402. Regarding the chain of custody, the prosecution established that the video was recovered from the business across the street from the club and was later analyzed by Kevin Curtis, a forensic video technician with the Michigan State Police. Thus, the prosecution provided sufficient evidence to establish, at least in part, the chain of custody. An objection to the admissibility of the video would have been futile because gaps in the chain of custody go to weight, not admissibility. *White*, 208 Mich App at 132. Defendant also has not indicated what issues may have arisen in the chain of custody, and thus, has not established the factual predicate for his claim. See *Jackson*, 313 Mich App at 432. Finally, even if defense counsel's performance was deficient for moving to admit the video in the first place, defendant has not demonstrated prejudice as a result of the video being admitted. The video does not depict any new information, and it only generally corroborated the testimony of the various witnesses. Thus, defense counsel was not ineffective for failing to object to the admissibility of the video, or even for moving to admit it in the first place.

Defendant also raises challenges to testimony related to the video recording; specifically, the testimony about the recording's time stamp and Deward's testimony about his own movements in the video. While Detective Anthony Carlisi, the officer in charge, may have contradicted the testimony of Kevin Curtis, the forensic video technician, by stating that the time stamp was wrong, that supposed discrepancy did not play any role in defendant's case. Defendant did not contend during closing arguments that the timing of the murder played any role in defendant's guilt or innocence. Even if defense counsel should have inquired further into the discrepancy or objected to Detective Carlisi's testimony, that would not have changed the fact that multiple witnesses, including Lott, Grimes, and Hamilton, observed defendant shooting at Michael and provided more than sufficient evidence to convict defendant. Detective Carlisi's testimony did not have a substantial impact on the prosecution's evidence, therefore, defendant was not prejudiced by his remarks.

Defendant also contends that Deward impermissibly interpreted Deward's own movements on the video recording as "it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99

---

[2] Relevant evidence may be excluded under MRE 403 if "its probative value is substantially outweighed by the danger of unfair prejudice;" however, defendant does not raise that challenge on appeal.

Mich App 66, 80; 297 NW2d 863 (1980). While a witness may not express an opinion on the defendant's guilt, a witness may offer testimony regarding events in a video that are based on the witness's own perceptions or experiences. *People v Fomby*, 300 Mich App 46, 50-53; 831 NW2d 887 (2013). In this case, Deward offered no opinion on whether defendant was guilty while watching the video; rather, Deward was interpreting his own movements based on his own knowledge. Deward had personal knowledge of his own movements that night, therefore, he may testify to what he did in the video. See MRE 602. As such, an objection to Deward's testimony would have been futile and defense counsel's performance was not deficient for failing to object to Deward's testimony. See *Ericksen*, 288 Mich App at 201.

Defendant next argues that defense counsel was ineffective for failing to object to hearsay testimony offered by Lott and for failing to move for a mistrial after Sergeant Derrick Maye, a homicide detective involved in the investigation, testified that defendant was "dangerous." We disagree.

Regarding Lott's hearsay testimony, the record demonstrates that the testimony was offered in response to defendant's cross-examination:

> [*Defense Counsel*]: Okay. And how long after the police did you call [Barbara and Lott's brother]?
>
> [*Lott*]: Pretty much right then when I called, I called the police and then I started calling her right after that.
>
> *Q*. Okay.
>
> *A*. Yes.
>
> *Q*. Alright. And did you say anything to Ms. Lott?
>
> *A*. Barbara?
>
> *Q*. Um-hum.
>
> *A*. Yes, I told her that [defendant] just killed her son.

Notwithstanding the fact that defense counsel would be objecting to his own question, defense counsel was not ineffective for failing to object to Lott's answer or even for asking the question in the first place. Even assuming arguendo that Lott's statement was inadmissible hearsay, defendant cannot demonstrate that he was prejudiced by Lott's testimony. Lott's statement that he "told [Barbara] that [defendant] just killed her son" merely reflected Lott's earlier testimony and belief that defendant had killed Michael. Lott saw defendant shoot at Michael inside the club, heard more gunshots outside the club, and went outside to find Michael dead and defendant standing there with a gun in his hand. Lott had earlier testified that he believed that defendant killed Michael, and his statement to Barbara merely reflected that testimony. Lott's statement did not contain any new prejudicial information; therefore, defense counsel was not ineffective for eliciting that testimony from Lott.

And regarding Sergeant Maye's testimony about defendant's arrest, the record establishes that the trial court immediately addressed Sergeant Maye's improper statement:

[*The Prosecution*]: All right. And now that you're being sent to the Red Roof Inn, in Southfield, Michigan, what is it that you begin to do?

[*Sergeant Maye*]: We do what we call a threat matrix. Because I was familiar with [defendant] in the past. He was armed then, he was armed with this shooting occurred at this --

[*Defense Counsel*]: Objection; he doesn't know that. That's up for the jury to determine; he can't say that.

[*The Court*]: Sustained.

[*Sergeant Maye*]: Okay, well based on previous experience, I felt that Mr. Threatt was dangerous. So, instead of us attempting to go in and get him ourself, I did what we call a threat matrix, and we organized our swat team.

[*The Court*]: And one thing I'm going to tell the jury is, I want that stricken from the record what he said about [defendant], with regard to that. Okay? Disregard that.

A mistrial is properly granted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Ortiz-Kehoe*, 237 Mich App 508, 514; 603 NW2d 802 (1999). While references to a defendant's history and prior incarceration are generally inadmissible, *People v Spencer*, 130 Mich App 527, 537; 343 NW2d 607 (1983), not every mention of an inappropriate subject matter before a jury warrants a mistrial, *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled on other grounds by *People v Thompson*, 477 Mich 146, 148 (2007). Specifically, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995); see also *People v Greenway*, 365 Mich 547, 551; 114 NW2d 188 (1962) (holding that a mistrial is not proper if the record does not reflect that the prosecutor "clearly anticipated or hoped for" the improper answer, or that the answer was "calculated to prejudice the minds of the jurors against the defendant."). Finally, jurors are presumed to follow the trial court's instructions, and those instructions are presumed to cure most errors. *People v Mesik (On Reconsideration)*, 285 Mich App 535, 542; 775 NW2d 857 (2009).

In this case, even if defense counsel had moved for a mistrial following Sergeant Maye's testimony, the trial court should not have granted a mistrial. Sergeant Maye's comment that defendant was "dangerous" was an unresponsive, volunteered answer that could not serve as a proper basis for a mistrial. See *Haywood*, 209 Mich App at 228. The prosecution did not deliberately elicit that testimony, nor did it ask a question that was calculated to invite an improper answer. See *Greenway*, 365 Mich at 551. Rather, the prosecution merely asked Sergeant Maye about the steps that he took in arresting defendant. Further, the trial court instructed the jury to disregard Sergeant Maye's statement both immediately after he made it and at the end of trial. The jury was presumed to follow the court's instruction to disregard Sergeant

Maye's statement, and defendant has not asserted anything on appeal that would overcome that presumption. See *Mesik*, 285 Mich App at 542. Therefore, defense counsel was not ineffective because requesting a mistrial would have been a meritless or futile argument. See *Ericksen*, 288 Mich App at 201.

Finally, defendant contends that both the prosecution and defense counsel advanced improper arguments during closing arguments, and the failure to object to the prosecution's misconduct or the inability to state defendant's correct burden of proof constituted ineffective assistance. We disagree.

The prosecution's statements made during closing argument did not rise to the level of prosecutorial misconduct, such that an objection would have made a difference in the outcome of trial. The prosecutor stated during closing arguments:

> Not one witness has come in here and said it was someone else, other than [defendant]. And when you go into that room take a look at who are those people. Are they just random people off the street that didn't get a good look at what happened, that didn't know and love this person? No. They are people that would rather have been anywhere else, other than here telling you that somebody they love and care about did a horrific crime.

> And the defense is going to get up and talk to you, too, and he is going to want you to believe something else, something else that's not based on fact, that's not based on evidence, that's not based on the witness testimony. He is going to want you to believe something else because he has to, not because it is based on fact or evidence. It's because he has to say it, and that's why he's going to tell you all of these things.

"To determine whether prosecutorial error has occurred, this Court looks to whether the defendant received a fair and impartial trial." *Johnson*, 315 Mich App at 200. During closing argument, a prosecutor may not make "a factual statement to the jury that is not supported by the evidence," or express "personal beliefs or opinions of a defendant's guilt." *Id*. at 201 (quotation marks and citation omitted). A prosecutor may not suggest that defense counsel is intentionally trying to mislead the jury because such a suggestion effectively communicates that defense counsel does not believe the defendant, which undermines a defendant's presumption of innocence. *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). However, any statements made by a prosecutor must be evaluated in light of the defendant's arguments and any relationship that the comments could have to the evidence admitted during the trial. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). "Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Id*. at 172, quoting *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (quotation marks omitted).

We conclude that the prosecution was merely commenting on the evidence and the witnesses that testified at trial. The prosecution attempted to bolster the credibility of its own witnesses because those witnesses were close friends or relatives of defendant who still testified that defendant was responsible for killing Michael. The prosecution then commented that

-6-

defense counsel would argue a theory that was not supported by those witnesses or the other evidence introduced at trial. The prosecutor implied that because defense counsel's argument was not reasonably based on the evidence, it was not credible, and one could reasonably infer from that lack of credibility that defense counsel's theory was, therefore, false. Even if the prosecution went too far in trying to attack defendant's credibility and in fact suggested that defense counsel was trying to intentionally mislead the jury, this Court has repeatedly held that the jury instructions cure any prejudicial effect of prosecutorial misconduct that occurred during closing arguments. See *Mullins*, 322 Mich App at 173; *Johnson*, 315 Mich App at 201. The trial court instructed the jury that the attorney's arguments were not evidence and that the jury should only accept things that the attorneys said if they are supported by the evidence, common sense, or general knowledge. Such an instruction cured any prejudice related to the misconduct, therefore, defendant cannot demonstrate that he was prejudiced by the prosecutor's remarks. See *Mullins*, 322 Mich App at 173; *Johnson*, 315 Mich App at 201.

And defense counsel's alleged "misstatement" of the burden of proof did not constitute ineffective assistance of counsel. Defense counsel stated during closing arguments:

> How are [Officer Justin Bartaway] and [Officer Anthony Johnson] both crazy? How have they both seen blood that y'all ain't see? There ain't none in evidence. You didn't see no basketball or football size of blood. You ain't got one picture admitted into evidence that's got a tennis ball drop of blood. You don't have that. And then I know because you know it should be the other way around, but I know what I got to do is prove my client innocent. So here's the deal. How does [Michael's] blood get degraded in fifteen, twenty minutes if it didn't come in contact with a cleaning substance? You answer me that question. See you don't convict people in this country with the type of evidence this man is asking you to convict him on.

Later, defense counsel did state the correct burden of proof, namely, that the prosecutor has the burden of proving defendant guilty.

It is not clear from that statement alone that defense counsel was actually misstating the burden of proof. Defense counsel could have been attempting to persuade the jury that even if he had to prove defendant innocent, he could still do so. Defense counsel was trying to highlight the discrepancies in the prosecution's evidence, thus, in essence, defense counsel was contending that the discrepancies were so substantial that they completely thwarted the prosecution's case. However, even if defense counsel had completely misstated the burden of proof, the trial court instructed the jury on the proper law and the correct burden of proof. The jury is presumed to follow the trial court's instruction, and that instruction is presumed to have cured any error. See *Mesik*, 285 Mich App at 542. Defendant has not put forth any argument to overcome that presumption; therefore, defendant has not experienced prejudice.

Finally, defendant argues that he was prejudiced by defense counsel's many unreasonable actions. It is possible that the "cumulative effect of several minor errors may warrant reversal where the individual errors would not." *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008), quoting *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003) (quotation marks omitted). Such is not the case here. Further, the evidence of defendant's guilt

was quite substantial. Lott's testimony that defendant shot repeatedly at Michael, that he followed Michael out of the club, that Lott heard more gunshots outside of the club, that Lott then saw defendant outside the club with a gun in his hand, and that Lott subsequently found Michael dead from gunshot wounds was more than sufficient to convict defendant of second-degree murder. Most aspects of Lott's testimony were corroborated by Deward, Grimes, and Hamilton. Barbara and Speight also heard defendant admit to killing Michael after the shooting. The investigation into Michael's death supported a conclusion that there was one shooter, and that, due to the trail of blood, the shooting had originally started inside the club. Therefore, even if defense counsel's performance had fallen below an objective standard of reasonableness by failing to object to certain occurrences or failing to advance certain arguments, defendant was not prejudiced by the cumulative effects of those actions. Because of the strong evidence presented by the prosecution, any objections, motions, or arguments that may indicate deficient performance did not prejudice defendant. The jury had ample evidence with which to convict defendant of second-degree murder, felony-firearm, and felon-in-possession and, consequently, likely would have done so even if defense counsel had done some things differently during trial.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause