*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LOUIS EDWARD LAWS,

       Defendant-Appellant.

UNPUBLISHED
April 11, 2019

No. 341739
Oakland Circuit Court
LC No. 2016-259498-FH

Before: TUKEL, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his conviction, following a bench trial, of possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), for which the trial court sentenced him to 99 months to 30 years in prison. We affirm.

## I. BASIC FACTS

Defendant's conviction arises from the seizure of cocaine during the execution of a search warrant at a residence on Kenilworth Street in Pontiac. Upon entering the residence, the police saw defendant exiting the bathroom, heard the toilet running, and noticed that the water level in the toilet was low. A police officer immediately kicked the toilet off the floor and recovered a sock from the basin of the toilet. The sock contained three bags of a powder, which tested positive for cocaine. The bags weighed 108 grams, 16 grams, and 4 grams, respectively.

Defendant was the only person inside the home at the time of the search. From the kitchen table, the police recovered a box of baking soda, a digital scale with white residue on the face, and a box of plastic bags. From the sink, the police recovered a glass Pyrex dish and two knives, which items tested positive for cocaine. From the garbage outside, the police recovered plastic bags with the corners missing and latex gloves. The police recovered $2,765 from defendant's pockets. Five cell phones were recovered from the home, including one phone that had incoming text messages identifying the recipient as "Lou" and requesting various amounts of both crack or powder cocaine, and outgoing messages responding affirmatively. Detective Daniel Main, who was qualified as an expert in drug trafficking, testified that the recovered evidence was consistent with drug trafficking and inconsistent with personal use.

-1-

## II. VALIDITY OF THE SEARCH WARRANT

Defendant's first claim on appeal is that the trial court erred by denying his motion to suppress the evidence recovered during the execution of the search warrant at the Kenilworth Street residence. Defendant argues that the supporting affidavit failed to establish probable cause that evidence of a crime would be found inside the home. We disagree.

" 'A trial court's findings on a motion to suppress evidence as illegally seized will not be reversed on appeal unless clearly erroneous, while questions of law and the decision on the motion are reviewed de novo . . . .' A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court has made a mistake." *People v James*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 339504) (citation omitted); slip op at 6.

The United States and Michigan Constitutions both guarantee the right of citizens to be free from unreasonable searches and seizures. See US Const, Am IV; Const 1963, art 1, § 11; *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "In order to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). A magistrate shall only issue a search warrant when he or she finds that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Franklin*, 500 Mich at 101. A presumption of validity exists regarding an affidavit supporting a search warrant. *Id*. at 103. A magistrate's finding of probable cause " 'shall be based upon all the facts related within the affidavit.' " *People v Keller*, 479 Mich 467, 482; 739 NW2d 505 (2007), quoting MCL 780.653. " 'Search warrants and the underlying affidavits are to be read in a common-sense and realistic manner . . . .' " *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992), quoting *Illinois v Gates*, 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983). Search warrants should not be read in a "hypertechnical manner." *People v Mullen*, 282 Mich App 14, 27; 762 NW2d 170 (2008); see also *United States v Weaver*, 99 F 3d 1372, 1378 (CA 6, 1996) ("As we are aware that 'affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation,' we remain cautious not to interpret the language of affidavits in a 'hypertechnical' manner.") (citation and quotation marks omitted).

> Probable cause may be based, in part, on information supplied by a confidential informant, provided that the affidavit included "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). "[T]he fact that the police previously had utilized information provided by [a particular] informant in other warrant requests with successful results provide[s] . . . support for the magistrate to conclude that the informant [i]s credible and reliable." [*James*, ___ Mich App at ___; slip op at 5 (citations omitted).]

Independent police investigations that verify the accuracy and reliability of informant information support a finding of probable cause. *People v Waclawski*, 286 Mich App 634, 699; 780 NW2d 321 (2009).

As this Court recently explained in *James*, "When reviewing a magistrate's decision that probable cause existed, this Court considers 'whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause.' " *James*, ___ Mich App at ___; slip op at 5, quoting *Russo*, 439 Mich at 603. Likewise, in *Franklin*, our Supreme Court stated:

> A magistrate's finding of probable cause and decision to issue a search warrant are reviewed to ensure that the magistrate possessed a " 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing . . . ." A magistrate's finding of probable cause and his or her decision to issue a search warrant should be given great deference and only disturbed in limited circumstances. Judicial deference to a magistrate's issuance of a warrant is a legal principle found throughout United States Supreme Court caselaw intended to emphasize the magistrate's role as an independent judicial officer and to encourage law enforcement officers to secure warrants. *United States v Ventresca*, 380 US 102, 108; 85 S Ct 741; 13 L Ed 2d 684 (1965) ("A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."). [*Franklin*, 500 Mich at 101 (citations omitted).]

In this case, the confidential informant reported that defendant was selling cocaine from 690 Kenilworth, and also made deliveries from that address. The informant stated that during the 60 days preceding the affidavit, he had seen cocaine every time that he visited 690 Kenilworth. Moreover, within 48 hours preceding the affidavit, the informant had observed cocaine at the home. The informant gave a physical description of defendant and confirmed his identity using a photograph. The informant also identified defendant by his nickname, "Big Lou." Detective Main averred that, based on past investigations of defendant, he could confirm defendant's nickname. The informant described the physical appearance of the residence and its location on Kenilworth. Given this information, the affidavit did not merely baldly state that the informant had personal knowledge of criminal activity, but it instead set forth the informant's observations of cocaine sales by defendant and the presence of cocaine in the home at 690 Kenilworth. As such, the search warrant affidavit allowed the magistrate to find that the informant spoke with personal knowledge of defendant's drug activity.

The search warrant affidavit also established the informant's reliability. Detective Main averred that the informant had agreed to provide information to the Oakland County Sheriff's Office in both drug and other criminal investigations, and that the informant had come to the office to provide that information. Detective Main averred that the informant had "never furnished any false or misleading information during the time that [Detective Main] has known the informant." Specifically regarding drug trafficking, Detective Main stated that the informant's information had been true and accurate; it was "confirmed through various sources and investigative processes." In addition, over the course of four years, the informant had purchased narcotics and "provided information that has led to the initiation of numerous additional criminal investigations." Thus, by citing past involvement in police investigations, including drug trafficking, and involvement with the police over the course of years, Detective Main provided specific details about the informant's reliability.

The requirements of MCL 780.653(b) are satisfied with evidence of an informant's personal knowledge and reliability, but the affidavit also provided information supporting the informant's credibility. Detective Main and another deputy corroborated information from the informant. The deputy drove to Kenilworth with the informant, who immediately pointed out 690 Kenilworth. Moreover, Detective Main stated that the description and location of the home matched the informant's initial information. Again, the informant provided defendant's known nickname, described his appearance, and identified his photograph. In addition, Detective Main reviewed defendant's criminal history, which included numerous drug-related convictions and arrests.[1] This information was consistent with that provided by the informant and it further supports the finding of probable cause to issue the search warrant. Despite defendant's claim on appeal that any passerby could have provided his nickname and address, the intersection of this information with the totality of the other information in the affidavit, including the informant's observations of the cocaine and defendant's drug sales, along with the police investigation into defendant's history of drug sales, tended to establish the informant's credibility.

On appeal, defendant attempts to undermine the informant's reliability by arguing that the language in the affidavit suggests that multiple confidential informants actually provided information. The only basis for this argument is that in the affidavit Detective Main made two references to "*a* confidential informant," rather than referring to the informant initially as "*a* confidential informant" and thereafter as "*the* confidential informant." In addition, citing Detective Main's statements that he was "aware that informant has stated," "aware that informant gave information," and "aware that informant was shown," defendant suggests that the informant did not provide certain information directly to Detective Main, but Detective Main learned it second-hand from another source. Viewing the affidavit as a whole and in a commonsense manner, Detective Main only identified one informant. The magistrate could have reasonably concluded that there was only one informant because otherwise Detective Main would have necessarily distinguished between the informants or sources when stating the information provided and the history of assistance involving each informant. No such distinctions were made here. We do not subscribe to defendant's grammatical hypertechnical reading of the affidavit.

Defendant also attempts to undermine the reliability of the informant by stating that, even though the informant had consistently provided no false or misleading information, it was unclear how long the informant had been providing information. But defendant reads the affidavit line by line, without assessing the facts presented as a whole. Detective Main stated shortly afterward in the affidavit that the informant had provided information for four years.

---

[1] Defendant complains that there were no controlled purchases of drugs or surveillance by police to corroborate the informant's information. But MCL 780.653(b) only requires an informant's personal knowledge of the information and either that the informant is credible *or* that the information is reliable. See *Waclawski*, 286 Mich App at 699.

In sum, we conclude that the magistrate possessed a substantial basis for concluding that a search would uncover evidence of wrongdoing. *James*, ___ Mich App at ___; slip op at 5. Accordingly, the trial court did not err by denying defendant's motion to suppress.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel when, at trial, his attorney stipulated to the admission of the preliminary examination transcript of Detective Main's testimony, which was the sole testimonial evidence presented by either party at trial. We disagree.

We review de novo the constitutional question whether a defendant was deprived of his or her right to the effective assistance of counsel. *People v Unger* (*On Remand*), 278 Mich App 210, 242; 749 NW2d 272 (2008). But because no *Ginther*[2] hearing occurred, our review of this issue is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

The United States and Michigan Constitutions guarantee a defendant the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 US at 694. "[C]ounsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Defendant generally challenges defense counsel's decision to stipulate to the admission at trial of the preliminary examination transcript of Detective Main's testimony, which was the sole testimonial evidence presented by either party. In *People v Garcia*, 51 Mich App 109, 114-115; 214 NW2d 544 (1974), aff'd 398 Mich 250 (1976), this Court addressed a similar stipulation to the preliminary examination transcript and stated that

> the stipulation by defendant's counsel to allow the trial judge to read the transcript could constitute a conscious choice of trial strategy on the part of defendant's attorney in accordance with appellant's theory that he did not entertain the requisite intent at the time of the homicides. On this record, we hold it was. Whether we on review would agree or disagree with the trial actions or tactics in a given case is normally an academic point because there are few choices as to which most attorneys would universally approve.

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

Here too, defendant has not overcome the strong presumption that defense counsel's decision was sound trial strategy. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008).

Defendant claims that defense counsel should have cross-examined Detective Main or called additional witnesses to determine if the search was based on uncorroborated information from an unidentified informant. But defendant fails to establish a factual predicate for this claim by setting forth what additional testimony Detective Main or other witnesses could have provided. *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) ("defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.") The trial court had already denied the motion to suppress, ruling that there was sufficient information in the search warrant affidavit to establish probable cause to issue the search warrant. We concluded earlier that the trial court did not err because the affidavit set forth the informant's personal knowledge, and established that the informant was both reliable and credible. In any event, at the preliminary examination, defense counsel in fact questioned Detective Main about his efforts to corroborate the informant's information. Defense counsel elicited testimony that no "drug buys" were ever conducted at the house, and that Detective Main only conducted pre-raid surveillance for approximately half an hour before the search and observed nothing "of note." Given defense counsel's questioning, and absent any factual predicate for defendant's claim that additional questioning or additional witnesses could have produced favorable testimony, defendant has failed to establish a reasonable probability that further testimony on this subject would have made a difference in the outcome of the trial.

Defendant claims that if defense counsel had cross-examined Detective Main or called additional witnesses, they could have been examined about the absence of any evidence of defendant actually selling drugs. But again, at the preliminary examination, defense counsel elicited testimony that there was no evidence of "drug buys" or drug activity during the limited police surveillance. Defense counsel also elicited that Detective Main did not recover any weapons, and, in closing, argued that the absence of weapons indicated that defendant was not involved in selling drugs. Although defendant argues that defense counsel could have elicited testimony that defendant's fingerprints were not recovered from the bags, defense counsel made this argument in closing. Defendant has again failed to establish a reasonable probability that, but for defense counsel's performance, the outcome of the trial would have been different.

Defendant next claims that if defense counsel had cross-examined Detective Main or called additional witnesses, they could have been examined about the absence of evidence that defendant lived in the Kenilworth house. Again, at the preliminary examination, defense counsel actually cross-examined Detective Main on this topic. Defense counsel elicited testimony that none of the items recovered with defendant's name on them contained the Kenilworth address. Instead, pieces of mail with other addresses and pieces of mail for a woman with the Kenilworth address were found. Defendant has failed to establish a reasonable probability that further testimony on this subject would have made a difference in the outcome of the trial.

In sum, defendant has failed to establish that he was denied the effective assistance of counsel at trial. Further, absent any offer of proof demonstrating factual support for his allegations, remand for a *Ginther* hearing and further factual development is not required.[3]

## IV. JUDICIAL DISQUALIFICATION

Defendant's third claim on appeal is that the district court judge, Michael C. Martinez, should have disqualified himself from the preliminary examination because he had previously reviewed and authorized the search warrant. Defendant did not preserve this claim by moving for disqualification below. MCR 2.003(D); *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Therefore, defendant's unpreserved argument is reviewed only to ascertain whether any plain error affected his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Davis*, 216 Mich App 47, 51; 549 NW2d 1 (1996).[4]

A defendant has the right to a fair and impartial trial under both the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20. Defendant claims that Judge Martinez should have disqualified himself pursuant to MCR 2.003(C)(1)(a) and (c), which provide:

> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> * * *
>
> (c) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding.

"A trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153 (2012); *Jackson*, 292 Mich App at 598. A judge's involvement in prior proceedings involving the same defendant "does not amount to proof of bias for purposes of disqualification." *People v Upshaw*, 172 Mich App 386, 388; 431 NW2d 520 (1988). "The mere fact that a judge ruled against a litigant . . . is not sufficient to require disqualification or reassignment." *In re*

---

[3] Although defendant also claims that his constitutional rights of confrontation and to present a defense were violated when defense counsel stipulated to the admission of the preliminary examination transcript as substantive evidence and failed to call any defense witnesses, the stipulation waived those claims. Therefore, any alleged error is extinguished and appellate review is precluded. See *People v Buie*, 491 Mich 294, 305, 315; 817 NW2d 33 (2012).

[4] Defendant claims that structural error occurred and no proof of prejudice is required. But our Supreme Court has explained if a "reviewing court has concluded that judicial misconduct has denied the defendant a fair trial, a structural error has occurred and automatic reversal is required." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). As discussed further below, defendant has not established any judicial misconduct or any effects on his trial. Rather, he only alleges bias related to the preliminary examination. Therefore, the plain error standard applies.

*Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). "[J]udicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a deep-seated favoritism or antagonism that would make fair judgment impossible and overcomes a heavy presumption of judicial impartiality." *Id.* (citation and quotation marks omitted); see also *Jackson*, 292 Mich App at 598; *Armstrong v Ypsilanti Twp*, 248 Mich App 573, 596, 640 NW2d 321 (2001).

In *People v McCrea*, 303 Mich 213; 6 NW2d 489 (1942), the defendant made an argument similar to defendant's argument here. The defendant in that case was a prosecutor who had been accused of corruption and graft. *Id.* at 223. When the defendant, while acting as the prosecutor, declined the mayor's request for a grand jury investigation, the circuit judges granted a private citizen's petition for one and appointed Judge Homer Ferguson to serve as a one-man grand jury. *Id.* at 224. "As a result of the grand jury investigation indictments were returned and warrants were issued against [the defendant] and other[s]." *Id.* at 224-225. Judge Ferguson then conducted the preliminary examination. *Id.* at 225-226. After the defendant was convicted by a jury, he appealed and argued, *inter alia*, that Judge Ferguson should have been disqualified from the preliminary examination because he had served as the grand jury. *Id.* at 247-248. The basis of the defendant's argument was that

> as a one-man grand jury Ferguson had indicted him; that Ferguson had made a presentment to the Governor of the State for his removal as prosecuting attorney; and that, because of the widespread publicity regarding his indictment, Ferguson was 'placed in a position where he must either virtually repudiate his actions in indicting [the defendant], when sitting as a grand jury, or hold him for trial as a matter of course.' [*Id.* at 248.]

The Supreme Court rejected the defendant's claims and concluded that he had not been denied due process, stating:

> The record contains no affidavit substantiating [the defendant's] charge of prejudice and bias on the part of the examining magistrate. Our attention has not been called to any act or conduct on the part of Judge Ferguson, while conducting the preliminary examination, from which prejudice or bias could be inferred. Furthermore, the law is well settled that the due-process clauses of the Federal and State Constitutions do not require a preliminary examination in criminal proceedings. [*Id.* at 249.]

The Supreme Court held the same shortly afterward in a related case, *People v Roxborough*, 307 Mich 575, 580; 12 NW2d 466 (1943).

Just as in *McCrea*, there is no allegation of actual bias here. MCR 2.003(C)(1)(a). Defendant only alleges impropriety in the fact that Judge Martinez authorized the search warrant and presided at the preliminary examination. But the judge's involvement in the prior search warrant request, and the fact that his approval of that request was detrimental to defendant, does not establish bias for purposes of disqualification according to *Upshaw* and *In re Contempt of Henry*. We note that decisions involving issuance of a search warrant and binding a matter over for trial involve different standards. In the former, Judge Martinez decided whether the affidavit

demonstrated a "fair probability that contraband or evidence of a crime will be found in a particular place." *Franklin,* 500 Mich at 101. At the preliminary examination, Judge Martinez decided whether "probable cause exist[ed] to believe both that an offense . . . has been committed and that the defendant committed it." MCR 6.110(E). Given these differing standards, and like the judge in *McCrea,* Judge Martinez faced no implicit conflict and was not forced to repudiate his decision on the search warrant when deciding whether to bind defendant over for trial. Finally, the search warrant and affidavit were not admitted into evidence at the preliminary examination, and there is no evidence that Judge Martinez relied on those documents at the examination. Because there is no evidence that Judge Martinez had any personal knowledge of additional disputed evidentiary facts concerning the proceeding, other than matters learned in the course of the judicial proceedings, there was no basis for disqualification pursuant to MCR 2.003(C)(1)(a) and (c). See *FMB-First Nat'l Bank v Bailey*, 232 Mich App 711, 729; 591 NW2d 676 (1998).

Furthermore, defendant cannot establish that any alleged bias by Judge Martinez affected his substantial rights. As the court concluded in *McCrea*, and this Court recently restated in *People v Johnson*, 315 Mich App 163, 200 n 7; 889 NW2d 513 (2016), "a preliminary examination is not a constitutionally based procedure." Therefore, "any errors that occur at a preliminary examination will be deemed harmless if the defendant is subsequently convicted at an otherwise fair trial." *Id*. Defendant has not asserted that the alleged bias at the preliminary examination affected his bench trial before a different judge or that he was otherwise denied a fair trial. Therefore, he cannot establish error requiring reversal.

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional claims in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which have merit.

Defendant's last claims involve the sufficiency of the evidence supporting his conviction and bindover. A challenge to the sufficiency of the evidence in a bench trial is reviewed de novo, by reviewing the evidence in the light most favorable to the prosecution, to determine whether the trial court could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). "All conflicts with regard to the evidence must be resolved in favor of the prosecution." *Id.*

The elements of possession with intent to deliver 50 or more but less than 450 grams of cocaine are "(1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a mixture that weighed [at least 50 grams, but less than 450 grams, of cocaine]." *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998); MCL 333.7401(2)(a)(*iii*).

Regarding possession in criminal offenses, our Supreme Court has stated:

This Court has held that for possessory crimes in Michigan, actual possession is not required; constructive possession is sufficient. The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus

between defendant and the contraband. Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . . [*People v Minch*, 493 Mich 87, 91-92; 825 NW2d 560 (2012) (citations and quotation marks omitted).]

In other words, constructive possession means that the defendant "had the right to exercise control of the cocaine and knew that it was present." *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 440 Mich 508 (1992) (citation and quotation marks omitted). In *Wolfe*, the Supreme Court explained:

> We have stated that constructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug, or "the ability to produce the drug . . . ." or that the defendant had the "exclusive control or dominion over property on which narcotics are found . . . ." [*Id.* at 521, quoting *United States v Disla*, 805 F2d 1340 (CA 9, 1986).]

"It is well established that a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. Instead, some additional connection between the defendant and the contraband must be shown." *Id.* at 520 (citations omitted).

The evidence, viewed in a light most favorable to the prosecution, was sufficient to establish constructive possession. When the police began the search, defendant was exiting the bathroom where approximately 128 grams of cocaine were recovered from the running toilet. This evidence supported an inference that the cocaine had very recently been flushed down the toilet, and that it was defendant, the person seen exiting the bathroom, who flushed it. In addition, it was around 10:30 p.m. and nobody else was in the home. The fact that defendant's mail—even if it contained a different address—and clothing that would fit defendant's very large frame were present in the home supported an inference that defendant lived there. Defendant's knowledge of, and right to exercise control over, the drugs could be inferred from his residence at the house and the disposal of the cocaine in the toilet. The value of the cocaine, which Detective Main opined was between $4,500 and $12,800, suggested that the owner would not discard it unless it was necessary to avoid detection. This was not a case involving defendant's mere presence in the home. The evidence established a sufficient nexus between defendant and the cocaine to support a finding that defendant had either actual or constructive possession of the requisite amount of cocaine.

Defendant's knowledge of the cocaine could similarly be inferred from the attempt to discard it in the toilet. Detective Main testified that it is common for people to attempt to flush drugs down the toilet. Inside and outside the house, the police recovered a box of baking soda, a glass Pyrex dish with cocaine, two knives with cocaine, a digital scale with cocaine on the face, a box of plastic bags, plastic bags with the corners missing, and latex gloves. Detective Main testified that these items are typically used for making and packaging drugs. Defendant's intent to sell the cocaine could also be inferred from the phones in the home, which contained text messages to "Lou," which requested various amounts of both crack or powder cocaine. The outgoing messages responded affirmatively. Defendant's intent could further be inferred from the $2,765 recovered from his pockets. Detective Main opined, based on his experience, that the

evidence recovered from the Kenilworth home indicated that the cocaine was not for personal use, but was consistent with possession with the intent to deliver.

Although defendant argued at trial, and again argues on appeal, that the absence of any weapons in the home or controlled buys before the search indicated that he was not a drug dealer, the prosecution was not required to negate every reasonable theory consistent with defendant's innocence. *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004). We conclude that the prosecution presented sufficient evidence to support defendant's conviction of possession with intent to deliver 50 grams or more but less than 450 grams of cocaine.

Defendant also argues that there was insufficient evidence presented at the preliminary examination to support the bindover to the circuit court. But even if a district court judge erroneously concludes that sufficient evidence was presented at the preliminary examination to support a bindover, such error is rendered harmless by a conviction at trial on the basis of sufficient evidence. *Johnson*, 315 Mich App at 200 n 7. Pursuant to the parties' stipulation, the testimony from the preliminary examination was offered as substantive evidence at trial and, as previously explained, that evidence was sufficient to support defendant's conviction. Therefore, defendant's claim of error regarding the sufficiency of the evidence at the preliminary examination must necessarily fail.[5]

Affirmed.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[5] Defendant argues that the district court judge relied on non-record evidence regarding the effects of cocaine and improperly-admitted hearsay evidence. Defendant makes no citations to the record in support of these arguments and does not elaborate further. "An appellant may not . . . give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003); see also *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) ("[i]t is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position"). "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Johnson*, 256 Mich App at 339-340.

-11-