*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRYSTAL NICHOLE WILSON,

      Plaintiff-Appellant,

v

MICHAEL GARRETT,

      Defendant-Appellee.

UNPUBLISHED
April 28, 2022

No. 358398
Oakland Circuit Court
Family Division
LC No. 2018-865398-DM

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order denying her motion to change the domicile of KSG, plaintiff and defendant's four-year-old daughter. We affirm.

## I. FACTUAL BACKGROUND

Since their divorce in December 2018, plaintiff and defendant have shared joint-legal and joint-physical custody of KSG. Plaintiff and defendant's custody agreement entitled defendant to "reasonable and liberal parenting time" with KSG to be decided by the parties, and the parties decided defendant's parenting time would be every Tuesday and every other weekend. The custody agreement also prohibited both parties from moving KSG's domicile outside Michigan without the trial court's prior approval. In February 2021, after becoming aware plaintiff intended to accept a job promotion in Texas, defendant moved the trial court to enforce the custody agreement and prevent plaintiff from moving to Texas with KSG. Two weeks later, before the trial court decided defendant's motion to enforce the custody agreement, plaintiff moved the trial court to approve the change in KSG's domicile to Texas; defendant opposed plaintiff's motion. In April 2021, before an evidentiary hearing on plaintiff's motion for change of domicile, plaintiff filed an ex parte emergency motion to exercise extended parenting time in Texas so she could timely accept the job promotion; the trial court denied plaintiff's emergency motion to avoid altering KSG's domicile before the hearing on the matter. The trial court held the evidentiary hearing in July 2021 via videoconference technology, at which only plaintiff and defendant testified.

Plaintiff testified she had been plaintiff's primary caretaker since her and defendant's divorce, she and KSG had a strong bond, she and KSG spent a lot of time together, and she and KSG did many activities together, such as dancing, going to the playground, going on vacations, and choosing products from a make-up line plaintiff owns. Defendant testified he and KSG had a strong bond, he coordinated his parenting time with his four children so KSG could also form a strong bond with them, he cooked with KSG every Tuesday and Sunday, and he often took KSG swimming, to the park, and to the beach. Both plaintiff and defendant believed they had an effective coparenting relationship, both parties believed the other had a good relationship with KSG, and neither party expressed any concerns with the other's ability to parent KSG. According to plaintiff, defendant only sporadically exercised his parenting time throughout 2020 and into the early months of 2021, and he surrendered a great deal of his Tuesday parenting time during that period. Defendant, however, maintained he had always been active in KSG's life and he consistently exercised the majority of his parenting time.

Plaintiff wanted to move to Texas with KSG to pursue a job promotion opportunity, to provide a better quality of life for KSG, and to expose KSG to different cultures. Plaintiff's promotion would equate to an additional $6,000 to $7,000 in income each year, though she acknowledged she would be spending $2,400 more each year for her home in Texas than her home in Michigan. Plaintiff accepted the promotion in February 2021—before filing her motion to change KSG's domicile—because there were no similar advancement opportunities with her employer in Michigan. According to plaintiff, her employer allowed her to work remotely through the resolution of this case, though she stated she would forfeit the position if the trial court did not grant the change of domicile. Plaintiff found a preschool program in a Texas school district that she claimed was better than KSG's current Michigan school district, and she could utilize her company's daycare service if the preschool program was full. Plaintiff testified KSG would have a strong familial community in Texas because plaintiff's siblings and their families would also be relocating to nearby areas in Texas, and plaintiff claimed she did not consider her remaining family in Michigan to be part of her support group.

Defendant regularly attends a church at which his brother was a pastor and he is a minister-in-training, and the church has played a large part in his life over the past decade. According to defendant, about a dozen of his close family members attend the church and around 15 of plaintiff's family members attend the church. Although plaintiff used to attend defendant's church with KSG each week, she no longer attends the church at all; defendant still brought KSG to the church on his weekends with her. Without speaking to defendant beforehand, plaintiff enrolled KSG in the youth ministry program at a nondenominational church in Texas. Defendant first became aware of this during the hearing, and he opposed KSG's participation in the church because he preferred she be raised Baptist. To preserve defendant's relationship with KSG, plaintiff proposed a parenting time schedule that would provide defendant extensive parenting time during summer and winter breaks, as well as allow for frequent video chats and monthly in-person visits, for which plaintiff would pay the travel costs. Plaintiff maintained this parenting time schedule would provide defendant more parenting time than he previously exercised. Defendant, on the other hand, believed this plan would be insufficient to maintain his relationship with KSG and would disrupt his work and church schedules. Defendant testified that, if the trial court denied KSG's relocation, he would be an adequate primary caregiver for KSG.

After the evidentiary hearing, the trial court denied plaintiff's motion to change KSG's domicile. The trial court first took issue with defendant unilaterally changing KSG's religious affiliation and accepting the Texas job promotion before the trial court approved a change of domicile. The trial court found MCL 722.31(4)(a) did not favor relocation because the move would harm KSG's familial relationships in Michigan, the move would fundamentally alter defendant's relationship with KSG, and plaintiff failed to present sufficient evidence the move to Texas would actually improve KSG's quality of life. The trial court found factor (b) was neutral regarding relocation because, while plaintiff was not moving with the intention of harming defendant's parenting time, that was an unintended side effect. The trial court found factor (c) did not favor relocation because no proposed parenting plan would maintain defendant's relationship with KSG. The trial court also found factor (d) favored relocation and factor (e) was neutral regarding relocation. Based on its analysis, the trial court found plaintiff failed to demonstrate by a preponderance of the evidence KSG's change of domicile to Texas was warranted under MCL 722.31(4) and, accordingly, denied plaintiff's motion. Plaintiff now appeals.

## II. ANALYSIS

Plaintiff argues the trial court improperly denied her motion to change KSG's domicile. Specifically, plaintiff argues the trial court incorrectly assessed—against the great weight of the evidence—MCL 722.31(4)(a), (b), and (c) as either disfavoring relocation or being neutral regarding relocation, rendering the trial court's denial of plaintiff's motion an abuse of discretion. We disagree.

## A. STANDARD OF REVIEW AND BACKGROUND LAW

"This Court reviews a trial court's decision regarding a motion for change of domicile for an abuse of discretion and a trial court's findings regarding the factors set forth in MCL 722.31(4) under the 'great weight of the evidence' standard." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) (citation omitted). An abuse of discretion regarding motions for a change of domicile exists "only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Id*. (quotation marks and citation omitted). "This Court may not substitute its judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Id*. at 325. (quotation marks, citation, and alteration omitted). This Court reviews questions of law de novo. *Id*. at 325.

Because a child subject to a custody order has "a legal residence with each parent," a parent must obtain a court order to "change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." MCL 722.31(1). "A motion for a change of domicile essentially requires a four-step approach" in which the trial court advances to each successive step only after the prior step has been satisfied. *Id*. at 325-327.

First, a trial court must determine whether the moving party has established by a preponderance of the evidence that the factors enumerated in MCL 722.31(4), the

so-called *D'Onofrio*[1] factors, support a motion for a change of domicile.  Second, if the factors support a change in domicile, then the trial court must then determine whether an established custodial environment exists.  Third, if an established custodial environment exists, the trial court must then determine whether the change of domicile would modify or alter that established custodial environment.  Finally, if, and only if, the trial court finds that a change of domicile would modify or alter the child's established custodial environment must the trial court determine whether the change in domicile would be in the child's best interests by considering whether the best-interest factors in MCL 722.23 have been established by clear and convincing evidence.  [*Id*. at 325.]

Under the first step, the party requesting the change of domicile must establish by a preponderance of the evidence the change is warranted under MCL 722.31(4).  *Id*. at 326.  "Before permitting a legal residence change," the trial court must consider the following five factors, keeping "the child as the primary focus":

(a) Whether the legal residence change has the capacity to improve the quality of life for both the child and the relocating parent.

(b) The degree to which each parent has complied with, and utilized his or her time under, a court order governing parenting time with the child, and whether the parent's plan to change the child's legal residence is inspired by that parent's desire to defeat or frustrate the parenting time schedule.

(c) The degree to which the court is satisfied that, if the court permits the legal residence change, it is possible to order a modification of the parenting time schedule and other arrangements governing the child's schedule in a manner that can provide an adequate basis for preserving and fostering the parental relationship between the child and each parent; and whether each parent is likely to comply with the modification.

(d) The extent to which the parent opposing the legal residence change is motivated by a desire to secure a financial advantage with respect to a support obligation.

(e) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.  [MCL 722.31(4)(a) to (e).]

If the party requesting the change of domicile fails to demonstrate the change is warranted under MCL 722.31(4), the trial court must deny the motion without considering the other three steps. *Rains*, 301 Mich App at 325-327.

---

[1] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A 2d 27 (Ch Div, 1976).

## B. THE TRIAL COURT DID NOT PREVENT PLAINTIFF FROM PRESENTING EVIDENCE AT THE EVIDENTIARY HEARING

As an initial matter, the record belies plaintiff's unpersuasive arguments the trial court prohibited her from utilizing exhibits or calling additional witnesses during the evidentiary hearing, thereby preventing her from entering into the record necessary evidence regarding her proposed relocation. While it is true the trial court prohibited the parties from screensharing exhibits during the videoconference hearing, the trial court did not prohibit the parties from otherwise utilizing exhibits during the hearing. Rather, the trial court indicated the parties "should have electronic copies" of the exhibits in front of them instead of screensharing them, and plaintiff's counsel did not object to this format. Moreover, plaintiff's counsel discussed and utilized multiple exhibits during the hearing, despite the lack of screensharing. The trial court also did not prohibit the parties from calling additional witness, but rather, merely "discourage[d]" the parties from calling witnesses that would only present cumulative information already directly provided by plaintiff and defendant. In addition to failing to object to the trial court's suggested limitation of witnesses, plaintiff's counsel rested on plaintiff's testimony alone and chose not to call any additional witnesses even after expressly reserving the right to do so.

Although the record indicates plaintiff was free to utilize any admitted exhibits and free to call any necessary witnesses, to any extent the lack of screensharing exhibits or any alleged limitation on calling witnesses hampered plaintiff's ability to present or discuss her evidence, the trial court did not abuse its discretion by limiting or controlling the presentation of the evidence. A trial court has broad inherent authority to control its courtroom, including the authority to control the manner of presenting evidence. *People v Johnson*, 315 Mich App 163, 177; 889 NW2d 513 (2016), citing MRE 611(a) (granting trial courts "reasonable control over the mode and order of . . . presenting evidence" to effectively ascertain the truth and avoid needless consumption of time). "An exercise of the court's 'inherent power' may be disturbed only upon a finding that there has been a clear abuse of discretion," *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (citation omitted), and it cannot be said the trial court's mere limitation or controlling of the presentation of the evidence fell outside the range of reasonable and principled outcomes, see *id*. (explaining the abuse-of-discretion standard as applied to a trial court's exercise of an inherent power).

Plaintiff only raises issues on appeal with the trial court's findings regarding MCL 722.31(4)(a), (b), and (c); accordingly, the trial court's findings regarding factors (d) and (e) will not be disturbed. See *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019) (explaining failure to brief an issue on appeal constitutes abandonment).

## C. THE TRIAL COURT PROPERLY FOUND MCL 722.31(4)(a) DID NOT SUPPORT RELOCATION

Plaintiff argues the trial court improperly discounted admitted evidence that demonstrated the proposed change of domicile would improve KSG's quality of life. While the trial court declined to consider admitted evidence the parties did not reference during the hearing, to any extent that such was an abuse of discretion, it amounted to harmless error because even accepting all her testimony and exhibits as true, plaintiff still failed to present sufficient evidence demonstrating the change of domicile would improve KSG's quality of life. Although plaintiff

maintained the Texas school district would provide KSG a better education, plaintiff acknowledged the school district KSG would attend if plaintiff kept her home in Michigan was rated fairly well. While "the benefits of the school or school district where the moving party plans to relocate is a relevant consideration" under factor (a), *Yachcik v Yachcik*, 319 Mich App 24, 41; 900 NW2d 113 (2017), plaintiff failed to demonstrate precisely how the Texas school district would have actually *improved* KSG's quality of education, aside from presenting general school ratings.

Additionally, although plaintiff testified KSG would have a large familial community in Texas because plaintiff's siblings and their families would be living nearby, defendant's testimony suggested the move would take KSG away from the large familial community she had at defendant's church. While there was a dispute as to how often defendant exercised parenting time and how close KSG was to her church family, the undisputed evidence demonstrated defendant and KSG shared a good relationship and religion played a large role in KSG's life. In light of the parties' testimony, it was not against the great weight of the evidence for the trial court to determine the move would fundamentally alter KSG's relationship with defendant and her church family. Given plaintiff's proposed move would disrupt KSG's established relationship with defendant, the trial court properly found plaintiff failed to meet her burden of demonstrating the change of domicile would otherwise improve KSG's quality of life, especially considering the emphasis plaintiff placed on ensuring KSG maintained a strong relationship with defendant. See *Yachcik*, 319 Mich App at 44-45 (reasoning removing a child from "a significant network of extended family members" weighed against finding an improvement in the child's quality of life). At most, it appears plaintiff established KSG would have a relatively equivalent quality of life in Texas as she had in Michigan.

The trial court's findings that plaintiff's promotion offered only marginal benefits also does not appear to be against the great weight of the evidence. Plaintiff testified there were no similar advancement opportunities through her employer in Michigan, but she provided no testimony or evidence showing there existed no similar positions—at similar wages—at other companies in Michigan. Similarly, plaintiff failed to explain what types of advancement opportunities she would have through her employer in the future if she accepted the promotion; she merely stated there was room for advancement. Moreover, plaintiff's undisputed testimony established she would be making only $6,000 to $7,000 more each year with the promotion, but she would be spending $2,400 more each year for her apartment in Texas. Thus, plaintiff's net yearly income would likely increase by no more than about $4,600, and that does not account for potential daycare costs if her preferred preschool program is full, any cost-of-living adjustments, or the potential $1,320 in flights she offered to cover to allow defendant to see KSG at least once a month.[2] For those reasons, it cannot be said the facts clearly preponderate in the opposite direction of the trial court's finding plaintiff failed to demonstrate the marginal monetary benefits from her promotion outweighed the potential damage to KSG's relationship with defendant or her other family in Michigan. See *Yachcik*, 319 Mich App at 44 (affirming the trial court's finding that the benefit the child received from "a moderate increase in the family's disposable income" as a result of a

---

[2] Plaintiff testified flights between Michigan and Texas cost $55 to $110. Assuming plaintiff paid $110 for each monthly flight, these flights would cost her an additional $1,320 each year.

long-distance move did not outweigh the "disrupti[on] to the child's strong ties" to his "large extended family"). Accordingly, the trial court properly found factor (a) did not support relocation.

## D. THE TRIAL COURT PROPERLY FOUND MCL 722.31(4)(b) WAS NEUTRAL REGARDING RELOCATION

Deferring to the trial court's opportunity to assess the credibility of the parties, its finding that plaintiff's proposed relocation to Texas was inspired by personal and professional advancement, not a desire to frustrate defendant's parenting time, does not appear to be against the great weight of the evidence. Undisputed testimony by both parties demonstrated plaintiff wanted defendant and KSG to have a strong relationship. Although there was conflicting testimony about plaintiff's willingness to substitute parenting days on at least one occasion, the evidence demonstrated the parties generally worked through their issues and effectively coparented KSG without resorting to court involvement.

However, the parties presented conflicting testimony regarding defendant's utilization of parenting time. Defendant presented evidence alleging he only infrequently surrendered his parenting time with KSG, while plaintiff presented evidence alleging defendant more frequently surrendered his parenting time. Even taking into account plaintiff's allegations that defendant often surrendered parenting time, defendant's testimony established he and KSG had a strong relationship and performed numerous activities together, including attending church together every other week. While it is uncertain precisely how often defendant surrendered his parenting time with KSG, it is clear he played a large role in KSG's life, contrary to plaintiff's implications otherwise. Despite the conflicting evidence in this case, it cannot be said the facts clearly preponderate in the opposite direction of the trial court's finding that both parents utilized their parenting time to a sufficient degree. *Rains*, 301 Mich App at 325. It also cannot be said the trial court's doubts that defendant would be able to exercise significantly more parenting time under the proposed plan went against the great weight of the evidence. To the contrary, the evidence demonstrated defendant would have to schedule his parenting time far in advance, thereby diminishing his current ability to exercise parenting time liberally. Additionally, as the trial court found, video chatting would be an imperfect substitute for defendant's weekly in-person parenting time. Accordingly, considering plaintiff's parenting-time-neutral desire to relocate and the dispute regarding defendant's prior exercise of parenting time, the trial court properly found factor (b) was neutral regarding relocation.

## E. THE TRIAL COURT PROPERLY FOUND MCL 722.31(4)(c) DID NOT SUPPORT RELOCATION

Given the parties' demonstrated history of successful coparenting, the trial court found both parties would likely comply with a modified parenting time schedule if the trial court could fashion one. Deferring to the trial court's opportunity to assess the credibility of the parties, that finding does not appear to be against the great weight of the evidence. This Court has clarified, however, "the inquiry under factor (c) is not which plan, the current visitation plan or the proposed schedule, is the best plan. Rather, the inquiry is only whether the proposed parenting-time schedule provides a realistic opportunity to preserve and foster the parental relationship previously enjoyed by the nonrelocating parent." *McKimmy v Melling*, 291 Mich App 577, 584; 805 NW2d 615 (2011). Consequently, when assessing factor (c), the trial court should "consider the financial

feasibility" of the proposed plan, as well as the degree to which modern technology can preserve the parental relationship. *Id*. at 583. The trial court believed it would be unable to modify the parenting time schedule to preserve and foster defendant and KSG's relationship if KSG relocated to Texas because defendant's parenting time was deeply intertwined with specific in-person activities for which video chatting would be an imperfect substitute. In light of the parties' testimony, this finding also does not appear to be against the great weight of the evidence.

Defendant's undisputed testimony demonstrated his parenting time with KSG involved numerous bonding activities such as cooking together, going to the park or beach, swimming, and attending church together. Although plaintiff's proposed parenting plan may provide defendant with more cumulative parenting time over the course of the year, it would disrupt the frequency defendant could engage in those bonding activities. Defendant's undisputed testimony also established he would have to alter his work and church schedule to comply with plaintiff's proposed parenting plan. Additionally, although plaintiff contended she often received good deals on flights, her ability to pay for KSG's or defendant's flights to see each other was questionable, even with her increased salary. To counteract these effects, plaintiff offered defendant frequent video calls with KSG. While video chatting may increase the frequency of defendant's contact with KSG, it would be an imperfect substitute for the in-person parenting time they now share. Thus, contrary to plaintiff's assertion that the proposed plan was better for defendant merely because it provided him additional parenting time, the facts do not clearly preponderate in the opposite direction of the trial court's finding the proposed plan would significantly hinder defendant's parental relationship with KSG. *Rains*, 301 Mich App at 325. Accordingly, the trial court properly found factor (c) did not support relocation.

### III. CONCLUSION

Because the trial court's findings regarding factors (a), (b), and (c) were not against the great weight of the evidence, the trial court did not abuse its discretion in denying plaintiff's motion to change domicile because plaintiff failed to prove, by a preponderance of the evidence, the proposed change in KSG's domicile was warranted under MCL 722.31(4). Accordingly, the trial court properly denied plaintiff's motion to change KSG's domicile without continuing the four-step analysis. *Rains*, 301 Mich App at 325-327.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan

-8-