*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

ANTHONY LAMONT-DSHAWN BROWN,

     Defendant-Appellant.

FOR PUBLICATION
May 2, 2024

No. 359376
Eaton Circuit Court
LC No. 2020-020080-FC

Before: LETICA, P.J., and N. P. HOOD and MALDONADO, JJ.

N. P. HOOD, J. (*concurring in part, dissenting in part*.)

I respectfully concur in the result. I agree with the majority's analysis and conclusions in Section IV regarding the missing-witness instruction. And I agree with the majority's ultimate conclusion that this Court should affirm defendant Anthony Lamont-Dshawn Brown's conviction, but I disagree with the majority's Confrontation Clause analysis.

I write separately because I would affirm on the basis that the masked witness's testimony was a plain error, but Brown cannot establish prejudice warranting reversal. It is apparent that a Confrontation Clause violation occurred. See *Crawford v Washington*, 541 US 36, 61-63; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (holding that the Confrontation Clause *requires* a face-to-face encounter). See also *People v Sammons*, 191 Mich App 351, 363-366; 478 NW2d 901 (1992) (holding that a witness testifying with a mask on violates the Confrontation Clause). The trial court allowed a prosecution witness to testify while wearing a mask; this necessarily violated the bright-line rule requiring a face-to-face confrontation. See *Crawford*, 541 US at 61-63, 67-68. See also *Sammons*, 191 Mich App at 359-366. Even under the more flexible Confrontation Clause precedent that predates *Crawford*, an error occurred because the trial court permitted the masked testimony without making fact-findings or legal conclusions regarding the necessity of the procedure (i.e., wearing a mask during testimony) or balancing the valid interest in the witness testifying while wearing a mask (i.e., the witness's health) against Brown's confrontation rights, including those that remained intact (i.e., oath, cross-examination). See *Maryland v Craig*, 497 US 836, 855-858; 110 S Ct 3157; 111 L Ed 2d 666 (1990) (outlining procedures for making findings supporting a decision to use special procedures for witness testimony). See also *United States v Maynard*, 90 F 4th 706, 710-712 (CA 4 2024) (affirming the district court application of

*Craig*'s balancing test in the context of masked testimony during COVID-19).[1] Despite this obvious error occurring either under *Crawford* or *Craig*, Brown cannot establish prejudice, so his claim fails the third prong of our plain-error analysis. See *Coy v Iowa*, 487 US 1012, 1021-1022; 108 S Ct 2798; 101 L Ed 2d 857 (1988); *People v Jemison*, 505 Mich 352, 355-357; 952 NW2d 394 (2020).

Finally, I write separately because although both the *Crawford* line of precedent and *Craig* line of precedent suggest Confrontation Clause violations are subject to review for prejudice, I question our ability to adequately or consistently measure the prejudice resulting from such violations, particularly when all indications suggest such violations concern an integral aspect of criminal trials. See *Jemison*, 505 Mich at 362-365.

## I. BACKGROUND

The majority accurately summarizes the factual background. Critically, Brown's codefendant, WF, testified against him at trial, describing Brown's role in the murder. WF was 15 at the time of the offense and 17 at the time of trial. While testifying, WF, who was incarcerated at the time, wore a face mask that apparently covered his nose and mouth. There was no discussion of the necessity of the face covering prior to his testimony. At the start of his testimony, when the prosecutor could not hear his initial answers, the prosecutor, trial judge, and witness had the following exchange:

> *Prosecutor*: Does he have to have the mask on?
>
> *Court*: Do you wanna wear the mask?
>
> *WF*: Yes.
>
> *Court*: Yes.
>
> *Prosecutor*: Okay.

After some additional questions, defense counsel indicated that he, his co-counsel, and Brown were having difficulty hearing WF's testimony. The trial court then stated, "[C]an you speak up or am I gonna have to rule that you're not available as a witness . . . ?" Brown's counsel then suggested WF could take the mask off. The trial court replied, "He doesn't want to [take off the mask], he doesn't have to. It's Covid-19." WF then refused counsel's request to pull his mask up so it did not touch his mouth and muffle his voice, replying, "Don't feel comfortable doin' that during this pandemic." Brown's counsel never objected to this procedure as violative of the Confrontation Clause. And the trial court never explicitly weighed Brown's right to confrontation against WF's (or the public's) interest in wearing a mask for health reasons.

---

[1] Although not binding on state courts, federal circuit court decisions may be considered for their persuasive value. *Wilcox v Wheatley*, 342 Mich App 551, 561 n 7; 995 NW2d 594 (2022).

The trial was in the summer of 2021. We may take judicial notice that this was during the COVID-19 pandemic and between six and eight months after vaccines for COVID-19 became available. The COVID-19 pandemic was particularly devastating for incarcerated individuals and individuals working in prisons and jails.

## II. CONFRONTATION CLAUSE VIOLATION

Brown argues that the Confrontation Clause violation resulting from WF's masked testimony was a plain error warranting reversal. Like the majority, I disagree. Although an error occurred and it was plain (which is to say obvious), Brown cannot establish an outcome-determinative prejudice let alone an error warranting reversal under plain-error. See *Jemison*, 505 Mich at 355-357 (remanding for trial court to determine whether Confrontation Clause violation was harmless). See also *Coy*, 487 US at 1021-1022 (denial of face-to-face confrontation is subject to harmless-error review, similar to other types of violations of the Confrontation Clause).

The majority correctly observes that because Brown's counsel did not object to the testimony at trial his claim is subject to plain-error analysis. See *People v Carines*, 460 Mich 750, 762 n 7 & 763; 597 NW2d 130 (1999); *People v Davis*, 509 Mich 52, 64-65; 983 NW2d 325 (2022). To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—in other words, the error affected the outcome of the proceedings. *People v Anderson*, 341 Mich App 272, 280; 989 NW2d 832 (2022). If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Carines*, 460 Mich at 763-764. Sometimes identified as a fourth prong of plain-error analysis, this last step conceptually overlaps with the third prong. *Davis*, 509 Mich at 75-76.[2]

---

[2] This standard also applies to the rare category of constitutional errors identified as "structural errors." *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015). Structural errors are "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." See *Arizona v Fulminante*, 499 US 279, 309; 111 S Ct 1246; 113 L Ed 2d 302 (1991) (holding that the use of coerced confession at trial was a structural error); *Weaver v Massachusetts*, 582 US 286, 293-296; 137 S Ct 1899; 198 L Ed 2d 420 (2017) (holding that the right to public trial is structural); *United States v Gonzalez-Lopez*, 548 US 140, 148-150; 126 S Ct 2557; 165 L Ed 2d 409 (2006) (holding that the Sixth Amendment right to counsel of one's choice is structural). Our Supreme Court recently explained that forfeited structural errors are also "particularly ill-suited to an analysis of whether the error affected the outcome of the trial court proceedings." *Davis*, 509 Mich at 72. Therefore, "the existence of a forfeited structural error alone satisfies the third prong of the plain-error standard, and a defendant need not also show the occurrence of outcome-determinative prejudice." *Id*. at 74. In other words, a forfeited structural error automatically satisfies the third prong and creates a formal rebuttable presumption that a defendant has satisfied the fourth prong. *Id*. at 73-75. As discussed in Section III, Brown has not argued that a Confrontation Clause violation—or specifically that a violation of the face-to-face encounter aspect of the Confrontation Clause—is plain error. We will not raise this issue for him.

Regarding the first prong of the plain-error analysis, the trial court permitting WF's masked testimony was an error for two reasons. First, the partial face mask denied Brown the right to a face-to-face confrontation. See *Crawford*, 541 US at 61-62, 67-68. See also *Sammons*, 191 Mich App at 364-366. Second, the trial court permitted this abrogation of Brown's Confrontation Clause rights without making case-specific fact-findings and legal conclusions regarding its necessity. See *Craig*, 497 US at 855. Such an abrogation *may* be permissible, but not without case-specific fact-finding and legal conclusions. See *id.* The tension, or awkwardness, between these two conclusions is directly tied to the unresolved conflict in the Supreme Court's Confrontation Clause precedent. Compare *Crawford*, 541 US 61-63 (holding that the Confrontation Clause's requirement of a face-to-face confrontation is absolute and rejecting balancing test approach) with *Craig*, 497 US at 852 (holding that the Confrontation Clause's requirement of a face-to-face encounter is not absolute, permitting a balancing of interests and necessity for alternative procedures). See also *Jemison*, 505 Mich at 360-366 (discussing the *Crawford*/*Craig* conflict, noting that *Crawford* did not explicitly overrule *Craig*, and reconciling the two cases by limiting *Craig*'s application to the specific facts in that case, but not directly addressing other cases holding the same).

The Sixth Amendment of the United States Constitution and Article 1, § 20 of the Michigan Constitution guarantee criminal defendants the right to confront the witnesses against them. See US Const, Am VI; Const 1963, art 1, § 20. A primary objective of the Confrontation Clause is to compel witnesses to " 'stand face to face with the [fact-finder] in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' " *People v Buie*, 285 Mich App 401, 408; 775 NW2d 817 (2009), quoting *Mattox v United States*, 156 US 237, 242-243; 15 S Ct 337; 39 L Ed 409 (1895). The right to confrontation " 'is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' " *Buie*, 285 Mich App at 408, quoting *Barber v Page*, 390 US 719, 721; 88 S Ct 1318; 20 L Ed 2d 255 (1968). The Confrontation Clause has four elements: (1) physical presence, (2) an oath, (3) cross-examination, and (4) "observation of demeanor by the trier of fact . . . ." *Buie*, 285 Mich App at 408 (quotation marks and citations omitted; alteration in original). When combined, these elements ensure "that evidence admitted against an accused is reliable and subject to . . . rigorous adversarial testing . . . ." *Craig*, 497 US at 846.[3]

Although reliability had long been a touchstone of Confrontation Clause jurisprudence, in *Crawford v Washington*, the United States Supreme Court established a bright-line rule requiring a face-to-face encounter for all testimonial evidence. *Crawford*, 541 US at 61-63. See also *Jemison*, 505 Mich at 360-366 (reconciling *Crawford* with prior, narrower holding in *Craig*). *Crawford* requires face-to-face cross-examination for testimonial evidence unless a witness is

---

[3] Our Supreme Court has interpreted the holding in *Craig* as limited to its specific facts in order to reconcile that case with *Crawford*. See *Jemison*, 505 Mich at 355-357 (reconciling *Crawford* with prior, narrower holding in *Craig*).

-4-

unavailable and the defendant had a prior opportunity to cross-examine. *Jemison*, 505 Mich at 362, citing *Crawford*, 541 US at 68.[4]

Here, that requirement was not satisfied because the witness testified behind a mask. See *Sammons*, 191 Mich App at 351. In *Sammons*, we held that the defendant's Confrontation Clause right to a face-to-face encounter was violated when the trial court allowed a prosecution witness to testify while wearing a mask (covering his face and head) and without disclosing his true identity. *Sammons*, 191 Mich App at 359-366. In *Sammons*, the defendant was charged with drug trafficking offenses. *Id*. at 354-356. At an entrapment hearing prior to trial, the defendant testified that an informant identified as "Rick" pressured him into participating in the drug conspiracy. *Id*. During the hearing, the trial court permitted "Rick," the prosecution's chief witness, to testify while wearing a mask that covered his face and head, and instructed the defense that he could not ask identifying questions of "Rick." *Id*. at 355-357. The trial court justified these procedures on the grounds that one of the defendants allegedly offered someone a quarter pound of cocaine to kill and emasculate "Rick." *Id*. at 358-359. See also *id*. at 359 n 2. This Court accepted that the state had a valid interest in promoting the safety of witnesses, but relying on *Craig* and *Coy*, concluded that the procedure (a full-face mask) failed to preserve sufficiently the court's ability to assess the witness's credibility through observation of demeanor. *Id.*at 364-366. On that basis, we remanded for a new entrapment hearing. *Id*. at 376.

The majority correctly observes that this case is different from *Sammons*, but it is not that different. Admittedly, the face covering in *Sammons* was different. There, the masked covered both the witness's face and head (apparently a ski mask). Here, WF's mask only covered his face—specifically his nose and mouth (presumably a surgical mask). While such a covering permits some assessment of a witness's demeanor, I must conclude that it still implicates the right to a face-to-face confrontation. Cf. *Sammons*, 191 Mich App at 359-366 (comparing the ski mask in *Sammons* to the screen used in *Craig*). Though not as obvious or egregious as the violation in *Sammons*, a mask covering a witness's nose and mouth (be it a surgical mask, a neck gaiter, a bandana, or a kerchief) still diminishes the face-to-face encounter and attendant assessment of credibility, and I would conclude still amounts to a violation of the face-to-face confrontation

---

[4] In this respect, I read our Confrontation Clause precedent differently than the majority. Like our Supreme Court in *Jemison*, 505 Mich at 360-366, I acknowledge a tension between *Crawford*'s bright-line rule requiring a face-to-face encounter and the "open-ended balancing tests" in *Craig*. See *id*. See also *id.* at 356 ("*Crawford* did not specifically overrule *Craig*, but it took out its legs"). I understand *Craig*, *Crawford*, and *Jemison* as each involving the parameters of a defendant's right to a face-to-face confrontation. See *Craig*, 497 US at 850 ("face-to-face confrontation requirement is not absolute . . ."); *Crawford*, 541 US at 42-50 (holding that a face-to-face meeting between an accuser and the accused was an essential part of the confrontation right); *Jemison*, 505 Mich at 360-366. I am not alone in recognizing the vergence their holdings create. See *United States v Cox*, 871 F3d 479, 492-495 (CA 6, 2017) (SUTTON, J., concurring); McAllister, *The Disguised Witness and Crawford's Uneasy Tension with Craig: Bringing Uniformity to the Supreme Court's Confrontation Jurisprudence*, 58 Drake L Rev 481, 507-512 (2010).

aspect of the Confrontation Clause. See *Sammons*, 191 Mich App at 359-366.[5] Put simply, testifying with a COVID mask puts this case closer to *Sammons* than it does to an individual testifying without a mask at all. If we conclude otherwise, we must be prepared for every prosecution witness, from informants to law enforcement officers, to elect to wear a surgical mask when testifying.

This brings us to the other difference between this case and *Sammons*: the reason for wearing a mask. In *Sammons*, the witness testified with a mask to protect his identity due to alleged threats. See *Sammons*, 191 Mich App at 357-358, 363-364. Here, WF testified with a mask to protect his health, and potentially the health of others in the court and his detention facility during the COVID-19 pandemic. But under *Crawford*, the reason for abandoning the face-to-face encounter requirement of the Confrontation Clause does not matter. See *Crawford*, 547 US at 53-56, 67-69. Confrontation is required, or there is a violation. See *id*. That is true whether an individual is wearing a mask to protect their identity, or wearing a mask to protect their health. I would conclude that wearing a mask (even a surgical mask) during adverse testimony at a criminal jury trial is an obvious violation of the Confrontation Clause—at least under *Crawford*.

Our Confrontation Clause precedent, however, is somewhat muddled. See *Jemison*, 505 Mich at 360-366. *Crawford* and its progeny established a bright-line rule requiring face-to-face confrontation without exception. *Jemison*, 505 Mich at 356, citing *Crawford*, 541 US at 68. But another line of cases—the precedent on which the majority relies—allows more flexibility and balancing of interests to abrogate portions of a defendants Confrontation Clause rights. See, e.g., *Craig*, 497 US at 836; *Coy*, 487 US at 1021. But see *Crawford*, 541 US at 67-68.

---

[5] I acknowledge that in unpublished opinions, this Court has addressed other closely-related issues involving face coverings at trial during COVID-19. See, e.g., *People v Wilson*, unpublished per curiam opinion of the Court of Appeals, issued January 19, 2023 (Docket No. 356825), p 9 (holding that the trial court requiring a defendant to wear a partial face mask at trial during the COVID-19 pandemic did not violate the Confrontation Clause, the trial court instructed witnesses to remove their face masks when testifying and other aspects of the Confrontation Clause were preserved); *Collins v Nizzi*, unpublished per curiam opinion of the Court of Appeals, issued January 20, 2022 (Docket Nos. 354510, 354871), pp 1, 6-10 (rejecting the plaintiff's argument that he was denied a fair trial because jurors wore face masks that covered their mouth and nose during voir dire and trial, and that certain witnesses wore face masks while testifying in plaintiff's no-fault trial). See also *United States v Crittenden*, unpublished order of the United States District Court for the Middle District of Georgia, issued August 21, 2020 (Docket No. 4:20-CR-7) (rejecting constitutional challenge to wearing a face mask and concluding that COVID-style masks eliminate only two aspects of demeanor for the jury to consider: movement of the nose and mouth). Although unpublished opinions are not binding, we may consider the rationale contained in an unpublished opinion to be persuasive. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004); MCR 7.215(C)(1). I am not persuaded. Most notably none of our unpublished authorities deal with precisely this issue. And *Crittenden* appears to conflict with our existing caselaw. Cf. *Sammons*, 191 Mich App at 363-366.

-6-

As the majority observes, under that line of cases, the *rule* requiring a face-to-face encounter is not absolute. *People v Johnson*, 315 Mich App 163, 184; 889 NW2d 513 (2016), quoting *Craig*, 497 US at 847. But see *Jemison*, 505 Mich 360-366 (reconciling *Craig* and *Crawford* by limited the holding in *Craig* to its facts); *Crawford*, 541 US at 67-68 (rejecting "open-ended balancing tests" and holding that the right to confrontation for testimonial evidence is absolute). In fact, this strand of precedent states that face-to-face encounters are not a requirement so much as a "preference." *Craig*, 497 US at 849. This line of cases has never been explicitly overruled. See *Jemison*, 505 Mich at 363; *Maynard*, 90 F 4th at 711 (reconciling *Craig* and *Crawford* by limited the holding in *Crawford* to its facts). This case exposes that tension between these two strands of precedent.

Nonetheless, even under this older and more malleable interpretation of the Confrontation Clause, an error occurred. The trial court failed to make findings of fact or legal conclusions about the necessity of WF wearing a mask while testifying, the legitimate interests supporting it, and what of Brown's other confrontation rights (i.e., oath, cross-examination) remained. See *Craig*, 497 US at 855-856.

Under *Craig*, the requirement of (or preference for) a face-to-face confrontation "must occasionally give way to considerations of public policy and the necessities of the case." *Craig*, 497 US at 848. Although this line of precedent held that the right is not absolute, the United States Supreme Court noted that it cannot be easily dispensed. *Id*. at 852. To that end, the United States Supreme Court previously identified procedures for finding a case-specific necessity before dispensing with the face-to-face confrontation requirement. See *id*. at 855-856. See also *Johnson*, 315 Mich App at 525-530 (discussing with approval the broad application of this framework to other modifications of witness testimony, including abrogation of confrontation rights and the presence of witness support persons).

In *Maryland v Craig*, the United States Supreme Court affirmed the trial court's decision to allow a witness to testify via one-way close-circuit television after making findings and conclusions supporting the abrogation of the defendant's confrontation rights. See *id*. at 852-856. There, the defendant was charged with physically and sexually abusing a six-year-old who attended the defendant's kindergarten. *Id*. at 840. The prosecution requested the court allow the child victim-witness to testify via one-way close-circuit television. *Id*. The trial court permitted the use of the procedure after receiving evidence and making a finding, pursuant to an existing statute, that the child witness would suffer serious emotional distress to the extent that the child would not be able to reasonably communicate. *Id*. at 842-843. The United States Supreme Court held that the procedure did not violate the defendant's right to confrontation. *Id*. at 847. It was in this context that the Court concluded, as the majority observes, that the Confrontation Clause does not require "an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant." *Id*. at 847 (emphasis in original). See also *Coy*, 487 US at 1021 (holding, two years earlier, that there may be exceptions to the Confrontation Clause, but those exceptions "would surely be allowed only when necessary to further an important public policy."). But the Court also clarified that a trial court may only use a special procedure when the prosecution shows that it is "necessary to further an important state interest." *Craig*, 497 US at 852 (holding that there was a "compelling" state interest "in the protection of minor victims of sex crimes from further trauma and embarrassment") (quotation marks and citation omitted). Thus, there are two requirements: (1) a legitimate state interest; and (2) an adequate showing of necessity. See *id*. at

855. See also *Johnson*, 315 Mich App at 184-185. Regarding the findings of necessity to justify the use of a special procedure, the Supreme Court stated:

> The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*, i.e., more than "mere nervousness or excitement or some reluctance to testify[.]" [*Craig*, 497 US at 855-856 (citations omitted).]

Acknowledging that the procedure the Court outlined in *Craig* is tailored to the specifics of that case, this Court has broadly applied this framework to other procedures that may abrogate (or implicate) the right to confrontation. See *Sammons*, 191 Mich App at 351. See also *Johnson*, 315 Mich App at 183-188 (acknowledging the framework in the context of a witness support dog and concluding that the use of a support dog did not implicate the Confrontation Clause).

One year after the decision in *Craig*, our Court applied its framework in *People v Sammons*, the primary case on which Brown relies. *Sammons*, 191 Mich App at 361-366. Though not explicitly stated, in *Sammons*, this Court appears to have acknowledged that the trial court considered the prosecution's interest in protecting the informant witness when allowing him to testify while wearing a mask. See *id*. at 357-358.

Even if we accept that the trier of fact was still largely able to assess WF's credibility, and we accept that Brown largely had his opportunity to eyeball or stare down the witness, under more recent precedent, we still must conclude that the trial court erred because it never considered whether WF's mask was necessary, or whether the state, WF, or someone else had a legitimate interest in WF testifying with a mask. To underline this point, we appear to have accepted that WF actually was afraid of getting infected with COVID-19. The reality is, aside from one reference to the pandemic, there is no evidence supporting this conclusion. Obviously, the trial court would have been equipped to make such findings. Even if WF was the only witness (or only person during the trial, including the lawyers, judge, and jurors) who wore a mask, the trial court could likely find a necessity for an incarcerated person in the summer of 2021 wearing a mask to protect themselves against COVID-19. But the trial court bears the responsibility for making those findings. And though our Supreme Court has limited the application of *Craig* to the facts of that case, see *Jemison*, 505 Mich at 365, to the extent it is still good law, we have looked to the procedures outlined in *Craig* for guidance in assessing whether to allow abrogation of the face-to-face requirement. See *Johnson*, 315 Mich App at 182-186. It just did not happen here. This was an obvious error under the *Craig* strand of precedent.

Further, this error is what distinguishes this case from *United States v Maynard*, the primary (and most persuasive) case on which the majority relies. There, the Fourth Circuit affirmed the federal district court's order, over the defendant's objection, that everyone in the courtroom during a criminal trial had to wear a face mask, including testifying witnesses. See *Maynard*, 90 F 4th at 709-711. The trial court concluded that face masks were necessary in light of the COVID-19 pandemic, and rejected the defendant's plea to allow witnesses to wear transparent face shields during testimony, finding them inadequate to protect the public health. *Id.* The district court found that the defendant's confrontation rights were not violated, and the Fourth Circuit affirmed its findings and conclusions. *Id.* Here, however, there are no findings and conclusions for us to affirm. Accepting that *Craig*, as illustrated in *Maynard*, provided a mechanism for the trial court to allow masked testimony, the trial court was still obligated to follow the procedure like the trial court did in *Maynard*. Its failure to do so is plain error.

Nonetheless, although there was an obvious Confrontation Clause violation thus satisfying the first two prongs of the plain-error analysis, Brown still cannot show that the error prejudiced him. See *Coy*, 487 US at 1021-1022. Though the *Crawford* line of cases and *Craig* line of cases require different analyses of whether a Confrontation Clause violation occurred, both strands of precedent subject violations of the face-to-face encounter requirement to harmless-error review. See *Coy*, 487 US at 1021-1022 (denial of face-to-face confrontation is subject to harmless-error review, similar to other types of violations of the Confrontation Clause); *Jemison*, 505 Mich at 366-367 (finding a Confrontation Clause violation under *Crawford* and remanding to the trial court to determine whether the violation was harmless). Admittedly, it remains unclear how exactly courts should go about measuring prejudice stemming from Confrontation Clause violations, particularly the requirement for an oath and face-to-face encounter, which unlike the right to cross-examination, are not directly tied to eliciting evidence. The simplest method appears to be asking whether a defendant has shown that the result would be different but for the violation. Here, Brown has not shown that anything would be different if WF testified without a mask. It is not clear that the jury would have reached a different conclusion if they could have seen WF's face during his testimony.[6] Because Brown has failed to establish prejudice, I agree with the majority's ultimate conclusion affirming his conviction.

## III. THE DIFFICULTY MEASURING PREJUDICE STEMMING FROM CONFRONTATION CLAUSE VIOLATIONS

The defense has not raised the issue of whether a Confrontation Clause violation (or more specifically a violation of the Confrontation Clause's requirement of a face-to-face encounter) is a structural error. We will not raise that issue for them. Nonetheless, applying the plain-error standard to a forfeited claim of a Confrontation Clause violation again forces us into the awkward position of measuring the prejudice associated with an indispensable part of criminal jury trials. See *Crawford*, 541 US at 61-62; *Jemison*, 505 Mich at 355-357.

---

[6] Further, as the majority acknowledges, the trial court stopped when trial participants could not hear WF's testimony, and the transcript of the trial is sufficiently clear.

This Court, our Supreme Court, and the United States Supreme, have not yet held that a violation of the Confrontation Clause is a structural error. See *People v Walker*, 273 Mich App 56, 67-68; 728 NW2d 902 (2006) (COOPER, J., concurring) (noting a gap in Confrontation Clause precedent); *Jemison*, 505 Mich at 360-366. But see *United States v Graham,* 278 F App'x 538, 544 n 2 (CA 6, 2008) (holding that admission of evidence in violation of the Confrontation Clause is not a structural error).[7] But the principles and directions outlined in *Crawford* and more recent Confrontation Clause precedent suggest that Confrontation Clause violations, particularly violations of its procedural components (i.e., an oath, physical presence before the fact-finder, a face-to-face encounter with the accused), are precisely what structural error contemplates:

> [The Confrontation Clause's] ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined."). [*Crawford*, 541 US at 61-62 (opinion by SCALIA, J.).]

See *Jemison*, 505 Mich at 361-363 (analyzing preserved Confrontation Clause error and explaining that the Confrontation Clause "does not guarantee reliable evidence; it guarantees specific trial procedures that were thought to *assure* reliable evidence, undeniably among which was 'face-to-face' confrontation.") (Quotation marks and citation omitted; emphasis in original).

Had Brown raised this issue, we might be required to confront more directly the question of how a defendant in his position could ever prove prejudice related to a violation of the face-to-face requirement of the Confrontation Clause. *Crawford* and *Jemison* suggest that we should not have to answer this question because confrontation rights are intrinsic and pervasive, and the harm resulting from their denial is impossible to measure. See *Crawford*, 541 US at 61-62; *Jemison*, 505 Mich at 355-357. But see *Jemison*, 50 Mich at 366-367 (remanding for a determination of whether the violation was harmless). The Confrontation Clause is not just about reliability; rather, it establishes bright-line procedures that define the fundamentals of criminal proceedings. See *Crawford*, 541 US at 61-62, 67-68; *Jemison*, 505 Mich at 355-357, 360-362. Had Brown argued that the Confrontation Clause violation was a structural error, it undoubtedly would have affected our plain-error analysis, and may have yielded a different outcome. This issue however is not presently before us.

## IV. CONCLUSION

For the reasons stated above, I concur in the result. A Confrontation Clause violation occurred, but Brown cannot establish whether and how it affected the outcome. Nothing in this opinion should be construed as diminishing the devastating impact of COVID-19 on criminal courts and their various stakeholders, including incarcerated individuals. Our courts remain able

---

[7] Although not binding on state courts, federal circuit court decisions may be considered for their persuasive value. *Wilcox*, 342 Mich App at 561 n 7.

to protect the health and safety of court stakeholders and the constitutionally-mandated components of criminal trials.

/s/ Noah P. Hood